UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. |
| EIGHTY-TWO THOUSAND, THREE HUNDRED AND TWENTY-ONE DOLLARS IN U.S. CURRENCY ($82,321.00), | ) ) ) ) ) ) |
| Defendant. | ) |

### VERIFIED COMPLAINT OF FORFEITURE

COMES NOW, Plaintiff, United States of America, by and through its attorneys, Jeffrey B. Jensen, United States Attorney for the Eastern District of Missouri, and Stephen Casey, Assistant United States Attorney, for said district, and for its Verified Complaint for Forfeiture states as follows:

### Nature of the Action

1. This is a civil action *in rem* brought by the United States of America seeking forfeiture of all right, title, and interest in the above-captioned defendant property pursuant Title 21, United States Code, Section 881(a)(6) and Title 18, United States Code, Sections 981(a)(1)(A).

2. The defendant property was seized by law enforcement on or about July 17, 2018 and is described more fully as eighty-two thousand, three hundred and twenty-one dollars in U.S. currency ($82,321.00)(the "defendant property").

### Jurisdiction and Venue

3. This Court has jurisdiction over the subject matter pursuant to 28 U.S.C. §§ 1331, 1345, and 1355 because this is a civil action arising under the laws of the United States, because

it is a proceeding of forfeiture, and because it has been brought by the United States.

4.  This Court has jurisdiction over the parties pursuant to 28 U.S.C. §§ 1345 and 1355 because this is a proceeding for forfeiture, and because it has been brought by the United States.

5.  Venue is proper in the Eastern District of Missouri pursuant to 28 U.S.C. § 1355 because an act giving rise to the forfeiture occurred in the Eastern District of Missouri.

## Statutory Framework

6.  Title 21, United States Code, Section 881(a)(6) authorizes the civil forfeiture of "all moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter."

7.  Title 18, United States Code, Section 1956(a)(1)(A)(i) criminalizes conducting a transaction, including transferring, delivering, or other disposition, knowing that such transaction represents the proceeds of some form of unlawful activity and that in fact involves the proceeds of a specific unlawful activity, including violations of the Controlled Substances Act, with the intent to promote the carrying on of the specified unlawful activity.

8.  Title 18, United States Code, Section 1956(a)(1)(B) criminalizes conducting a transaction, including transfer, delivery, or other disposition, knowing that such transaction represents the proceeds of some form of unlawful activity and that in fact involves the proceeds of a specific unlawful activity, including violations of the Controlled Substances Act, knowing that the transaction is designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of specified unlawful activity.

9. Pursuant to Title 18, United States Code, Section 981(a)(1)(A), any property, real or personal, involved in a transaction or attempted transaction in violation of Section 1956 of Title 18, or any property traceable to such property, is subject to civil forfeiture.

**Facts Giving Rise to the Forfeiture**

10. Beginning in approximately early 2017, the Drug Enforcement Administration ("DEA") has been investigating Gerald Hunter ("Hunter") for his participation in a conspiracy to sell cocaine and fentanyl, and launder proceeds from the sale of said drugs.

11. Hunter was previously convicted of possession with intent to distribute a controlled substance in the United States District Court for the Central District of California in 2008 and sentenced to 200 months in the Bureau of Prisons.

12. As a result of the ongoing conspiracy, Hunter was indicted on May 3, 2017 in the United States District Court for the Eastern District of Missouri for violations of Title 21, United States Code, Sections 841 and 846. He was declared a fugitive on May 22, 2017.

13. On April 27, 2017, Hunter, along with other co-conspirators, transported fentanyl to St. Louis, Missouri. Investigators were able to apprehend the co-conspirators but Hunter fled on foot and was not located. While fleeing the scene, Hunter dropped two duffel bags. Visual observation of the bags revealed bulk substances wrapped in cellophane. Analysis of the contents of the bags conducted at the St. Louis Metropolitan Police Department Laboratory confirmed the substances contained a detectable amount of fentanyl.

14. The substances recovered from April 27, 2017 were a distributable amount of fentanyl.

15. The DEA investigation further revealed that Temne Ada Hardaway ("Hardaway"), a paramour of Hunter's, participated in Hunter's drug trafficking organization.

16. On May 23, 2018, Hardaway told a confidential source ("CS") that she could obtain fentanyl and cocaine for the CS's "buyers." Hardaway then brokered a deal for $44,000.00 per kilogram of fentanyl with the CS.

17. Through a series of interviews, DEA learned that Hardaway laundered Hunter's drug proceeds through real estate transactions. Hardaway utilized drug proceeds generated from Hunter's drug trafficking organization to purchase real estate. Hardaway placed the real estate in her name, Hardaway, and in the name of her business, Second Chance Financing.

18. Hardaway also laundered drug proceeds through bank transactions. Hardaway utilized multiple people, including her grandmother, Louise Harris and her mother, Michelle Harris, to deposit drug proceeds into accounts at several banks and credit unions. The deposits were under $10,000.00 each time in order to avoid reporting requirements and detection by federal authorities. The depositors then withdrew the deposited cash via cashier's checks and/or wire transfers. These deposits were being made in escrow for a house purchased by Hardaway, along with the involvement of Hunter and other parties, located in Los Angeles, CA. The escrow deposits were funded almost entirely by multiple cash deposits made on the same day or in close proximity to the respective escrow deposits.

19. On July 12, 2018 in a Superseding Indictment, Hunter and Hardaway were charged in the Eastern District of Missouri for violations of Title 18, United States Code, 1956 and Title 21, United States Code, Section 841 and 846.

20. On July 16, 2018, federal search warrants were issued in the Central District of California for a variety of locations including the residence of Hardaway.

21. On July 17, 2018 investigators executed the federal search warrant at the residence of Hardaway.

22. During the search, investigators located and seized the defendant property in Hardaway's bedroom. Also located and seized in the same room were nine cellular telephones and photographs of Hunter.

23. Investigators interviewed Hardaway during the search. When asked to unlock electronic devices located in her residence, she stated, "I don't want to incriminate myself." She also said she knows Hunter is a fugitive and she repeatedly refused to aid in his location by investigators.

24. Investigators interviewed Louise Harris, Hardaway's grandmother who lives in the same duplex complex as Hardaway. Harris said that she knew who Hunter was and she had seen him occasionally at Hardaway's residence. Harris also stated that she had made deposits and obtained cashier's checks for Hardaway at different banks. When asked why she went to two different banks on February 22, 2017 to purchase two $9,500.00 cashier's checks, Harris responded that the bank told her she would have to fill out a report for the government if she bought both at the same bank because it was over $10,000.00.

25. DEA received records from the Internal Revenue Service on the earnings of Hardaway. She earned $13,500.00 in both 2014 and 2015. Total income for 2016 was $24,519.00 and 2017 was $28,380.00. Hardaway's company, Second Chance Financing, showed no tax return filed.

26. DEA also received records from the Internal Revenue Service for Harris. The total "adjusted gross income" for 2016 was $43,277.00. There was no income tax return on record for 2017.

## COUNT ONE – FORFEITURE
## 21 U.S.C. § 881(a)(6)

27. The United States incorporates by reference the allegations set forth in Paragraphs

1 to 26 above as if fully set forth herein.

28. The defendant property is proceeds or involved in an unlawful activity involving controlled substances.

29. Based on the foregoing, the defendant property is subject to forfeiture pursuant to Title 21, United States Code, Section 881(a)(6) as money furnished or intended to be furnished in exchange for a controlled substance, as proceeds traceable to such an exchange, and as money to be used to facilitate a violation of the Controlled Substances Act.

## COUNT TWO – FORFEITURE
## 18 U.S.C. § 981(a)(1)(A)

30. The United States incorporates by reference the allegations set forth in Paragraphs 1 to 26 above as if fully set forth herein.

31. The defendant property is proceeds or traceable to an unlawful activity involving controlled substances with the intent to promote the carrying of, and to conceal or disguise the nature, location, source, ownership or control of, a specified unlawful activity.

32. Based on the foregoing, the defendant property is subject to forfeiture, pursuant to Title 18, United Stated Code, Section 981(a)(1)(A) as property involved in a transaction or attempted transaction in violation of Title 18, United States Code, Section 1956, or as property traceable to such property.

## PRAYER FOR RELIEF

WHEREFORE, the United States of America prays that a Warrant for Arrest be issued for the defendant property and the defendant property be condemned and forfeited to the United States of America, in accordance with the provisions of law; and that the United States of America be awarded its costs in this action, and for such other relief as provided by law and the nature of the case may require.

Respectfully submitted,

JEFFREY B. JENSEN
United States Attorney

*/s/ Stephen Casey*
STEPHEN CASEY, #58879MO
Assistant United States Attorney
111 South Tenth Street, 20th Floor
St. Louis, Missouri 63102